JANUARY TERM, 1881, No. 255.                    APRIL 19TH, 1882.

## Snyder *versus* Elliott.

1. A. was indebted to B., and B. consented to accept a note to be made by C. to B.'s order for the amount. A. persuaded C. to execute the note as an accommodation, telling him that there would be no trouble, that it was a mere matter of form, and that he himself would take care of it. A. then delivered the note to B.

*Held*, that if the note was delivered in settlement of the debt of A. to B. and not as collateral security, which fact was found by the verdict, C. was liable to B. for the amount.

2. If B. took the note in payment of A.'s indebtedness, in whole or in part, he stood in the position of an innocent holder, and could not be affected by any equity between C. and A.

3. B., having paid value for the note, was not bound by any representations made by A. to C. at the time of its execution.

Before SHARSWOOD, C. J.; GORDON, TRUNKEY, STERRETT, and GREEN, JJ. MERCUR and PAXSON, JJ., absent.

Error to the Court of Common Pleas of *Schuylkill County*.

Debt, by W. D. Elliott, trading as W. D. Elliott & Co., against Joseph L. Snyder, upon a promissory note for $304,

dated February 29th, 1876, drawn by Snyder to the order of Elliott & Co., and indorsed by J. C. Holt.

Upon the trial in the Court below before WALKER, A. L. J., the following facts appeared.

In December, 1875, J. C. Holt was indebted to Elliott & Co., in about $900, and on the 13th of that month he gave them three notes, drawn by R. E. Holt and Thomas L. Holt, and indorsed by him for $295.50, $297.50, and $298.52, at 60 days, 90 days, and four months respectively. One of these notes became due and went to protest.

*Joseph C. Holt* testified, *inter alia:*

" The note, dated 29th February, 1876, was given to take up another note that my brother and his wife had given him, that was given to Mr. Elliott, and that went to protest, and I gave that note to take that note up. . . . . I proposed to fix (it) up by my father-in-law's indorsement of another note, but Mr. Elliott proposed that my father-in-law should be the maker of the note. My father-in-law is Joseph L. Snyder. Elliott accepted the note I went myself to see my father-in-law. . . . . Elliott told me that he would accept that note, and I went and got it. First he objected to signing the note, and afterwards he consented to sign it, and I told him there would be no trouble, that I would attend to it, and he signed it. Elliott was not there. I asked him whether he would sign it, and he objected, but he afterwards consented by my telling him that I would take care of it, and there would be no trouble, that it was a mere matter of form. . . . . The note was drawn up before I went there. The way I understood it, this note was to be given in settlement of the account, of course. There was nothing said about this note being given in order that I might have time to pay. The note was not given in consideration of the other note being given up, but was given to settle accounts and to cover the protest in the case of the other note."

On cross examination he said, *inter alia :*

" That was given as collateral for their part of the bill that was due, $304. . . . . The Snyder note was given to cover that portion of the account represented by the note that went to protest. . . . . I offered to give Snyder as collateral security for that part of the account. . . . I thought I would be able to pay the note when it came due. . . . . I gave the note as collateral security."

The defendant, *Joseph L. Snyder,* testified, *inter alia:*

" Mr. Holt came to me . . . . and said there was nothing in the signing of it. It was just a kind of form. So I hesitated a bit, and at last I took the note. He had it drawn

[Snyder *v.* Elliott.]

up already. He said there was no responsibility, and he would see it through."

Counsel for defendant proposed to ask the witness, "what was said by J. C. Holt in reference to his responsibility for the note in case he signed it, for the purpose of showing in connection with the other evidence in this case that there is no responsibility upon the part of the maker of the note."

Objected to as immaterial and irrelevant.

The offer was overruled and exception taken.

The witness continued:

"I got no consideration from Mr. Elliott. . . . . The idea was that the note was an accommodation to my son-in-law. . . . . He said 'Oh! it's a kind of a form, and there is nothing serious about it, and I will see that you do not have any trouble,' and I signed it."

*W. D. Elliott,* the plaintiff, testified, *inter alia:*

"The first note came due and was protested, and I came up here about two weeks after and endeavored to get the money, but J. C. Holt was not able to pay it. I looked to him principally, although the notes were drawn to Thomas & R. E. Holt and indorsed by J. C. Holt. I proposed to him that I would give him a little additional time if he would give me security, which he said he would endeavor to do. Afterwards he brought me this note of Snyder's. I never saw Snyder but once at the arbitration and once here, and never had any dealings with him at all. And that night I got Mr. Healy to inquire about Mr. Snyder's responsibility, and I finally took it. I had nothing to do with the drawing up of the note, and as to the note being drawn to the order of W. D. Elliott & Co., it was done through ignorance. I got Joseph Holt to indorse it on the back. The note was not an accommodation note; I wanted my money and not a note. That note settled up the note that had been protested two weeks before, and the interest and cost of collection. I offered to give Joseph Holt additional time provided he gave me security; and he brought me the Snyder note, and I gave him time in return. I have not sued the Thomas Holt notes to this day."　.

On cross-examination he said:

"This note that was given by Joseph Snyder was not given as collateral. It was given in payment."

Counsel for defendant asked the Court to charge the jury as follows:

1st. That if they find from the evidence in this case that the note in suit was made for the benefit of the plaintiff in this suit, he being the payee in this note, then it was a

[Snyder v. Elliott.]

mere accommodation, and the defendant is entitled to a verdict.

2d. That if said note was given by Joseph L. Snyder to William D. Elliott & Co. upon the representation of Joseph Holt that said note was simply an accommodation to him, and if the jury find from the evidence that Joseph Holt was authorized by Elliott to procure this note in the manner it was, and the said Joseph Holt misrepresented the object of giving the note, and the note instead of being given to Holt as a favor was given to William D. Elliott & Co., then William D. Elliott and Co. cannot recover, the note being turned to a different purpose, for which it was represented by the party procuring it.

3d. That, if the jury find from all the evidence in the case this note was given for the benefit of Elliott & Co., then the verdict must be for the defendant.

The Court answered these points as follows:

1. The evidence in this case shows that the note was given for the accommodation of Joseph Holt, and if the jury believe, as testified to by the plaintiff, that he took the note in payment of one of Joseph Holt's notes, and for Joseph Holt's indebtedness, and not as collateral security, then we decline to affirm this point.

2. Any fraud or misrepresentation, made by Holt to Snyder, without the knowledge of plaintiff, could not affect the plaintiff, if he took the note of defendant in payment of Joseph Holt's indebtedness, and not as collateral security.

3. Under all the evidence in this case, we decline to affirm this point.

The Court further charged the jury:

[Mr. Elliott testified that he never knew Snyder; that he only saw him twice, once at the arbitration after the suit was brought, and here in court. He says he noticed at the time that the note was an irregular note, and, thereupon, he required him to put his name on it. This would make Holt a surety for the note. There is no question but that Joseph Holt got value for this note, it being a part of his indebtedness; that is the undisputed evidence in this case. Joseph Holt should have paid it at maturity, but, as he could not, he made a proposition to give security for its payment.] Mr. Elliott said that he made the offer to him, and afterwards brought him this note signed by Mr. Snyder. He, also, said he took this note as payment of Mr. Holt's debt, and not as collateral security; that he gave thirty days' time in consideration that he would give him security for the payment of the note.

The evidence shows that he went away, and drew up the

body of the note himself, and brought it back signed, and gave it to Mr. Elliott. He also swears that he took it in payment of Holt's indebtedness so far as it reached, and did not take it as collateral security. [We say to you that whatever might have been the conversation between Holt and Snyder, whatever fraud (if there was any), though the counsel, I believe, do not urge that, whatever representations there might have been made by Holt, that he would meet the note himself, whatever provision he made to Snyder, or anything that occurred between Holt and Snyder would not affect the plaintiff, provided he paid value for it and did not take the note as collateral security, but took it in payment of Holt's indebtedness], whatever occurred that was not brought to his, Elliott's, attention, could not affect him, but if the plaintiff had notice that Snyder agreed to give his note, but was not to be called upon to meet it, and the plaintiff took it under these circumstances, then he would be affected by such an agreement. If it is true that he went away, and brought a note from Snyder, and Elliott took it as payment without notice, as he says, then he would not be affected by anything that occurred between Holt and Snyder, for the rule of law is that a *bona fide* holder of a negotiable note, without a knowledge of fraud, is not affected by the fraud of third persons. If you believe from the testimony of Elliott that he took it in payment of the indebtedness, and not as collateral, then he could recover against the defendant the amount of the note with interest, unless there was some fraud, but, if he was an innocent holder for value without notice of any fraud, then he could recover. That is the law, as laid down in numerous decisions, and thereupon we submit the facts to you under our explanations of the law. If you believe the testimony of Mr. Elliott that Holt had transactions with Mr. Elliott, and was indebted to him, and the further testimony that Mr. Holt failed to meet his notes at maturity, and if you believe Elliott's testimony that he agreed to give time if Holt would give further security, then we say that whatever might have been the understanding between Holt and Snyder as to this being a mere form, or as to there being no responsibility, it could not affect the plaintiff. If you find these facts, you will find for the plaintiff. If you find for the plaintiff, he would be entitled to the amount of the note with interest. We submit the case to you under all the circumstances.

Counsel for defendant excepted to the answers to his points and to the charge.

November 24th, 1880. Verdict for the plaintiff for $391.32, upon which judgment was afterward entered.

[Snyder v. Elliott.]

The defendant then took out a writ of error, assigning that the Court erred in the exclusion of the testimony offered, the answers to the points, and those portions of the charge within brackets.

*W. F. Shepherd*, for plaintiff in error.

If Elliott authorized Holt to procure the note pursuant to the understanding of Holt with Elliott, and he did procure it from Snyder in that way, the latter would not be bound to pay it. If Elliott authorized the note to be procured in the way it was, he made the act of Holt his own. Any agreement Holt made with Snyder would bind Elliott, and it would be competent to prove, as between the immediate parties to the transaction, what was said at the time the note was given : Breneman v. Furniss, 9 Norris, 186.

Where the check or note of a third party is received by a creditor from his debtor upon a pre-existing debt, the presumption is that it was received as a conditional payment. In the absence of proof of an agreement to the contrary, it is presumed to be given as collateral security : McIntyre v. Kennedy, 5 Casey, 448 ; 2 Parsons on Notes, 133 ; League v. Waring, 4 Norris, 244.

*Christopher Little*, for defendant in error.

Accommodation paper is the loan of the maker's credit, without restriction as to the manner of its use: Appleton v. Donaldson, 3 Barr, 386.

He, who puts himself in the situation of a principal, shall not escape by alleging that he was a surety: Walker v. Bank, 12 S. & R., 382.

The principle is a general one, that the person making or indorsing a negotiable note, for the benefit of another, is liable to a third person, even with notice of the want of consideration : 2 Parsons on Bills and Notes, 27 ; Byles on Bills, 237 ; Stephens v. Monongahela National Bank, 7 Norris, 162.

Whether viewed as the case of a note in the hands of a third party for value, or as that of a maker who has given his name to pay the debt of another, the defendant is liable. The time given Holt was a sufficient consideration to support the direct promise by Snyder: Silvis v. Ely, 3 W. & S., 420 ; Muirhead v. Kirkpatrick, 9 Harris, 237 ; Byles on Bills, 96–97 ; Sowerby v. Butcher, 2 C. & M., 368.

MAY 1ST, 1882.—PER CURIAM: The law, as laid down by the Court in the charge, is indisputable. If Elliott took the note in suit in payment of Holt's indebtedness in whole or

part, he stood in the position of an innocent holder, and could not be affected by any equity between Snyder and Holt. This was a question of fact, and was fairly submitted to the jury.

Judgment affirmed.